Joseph M. DeFazio
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
875 Third Avenue
New York, New York, 10022
Telephone: (212) 704-6341
Email: joseph.defazio@troutman.com
*Counsel for Plaintiff LoanCare LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LOANCARE, LLC | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| v. | | |
| | : | **COMPLAINT** |
| DIMONT & ASSOCIATES, LLC; INVESTOR CLAIM SOLUTIONS, LLC | : | |
| | : | |
| Defendants. | : | |

Plaintiff LoanCare, LLC ("LoanCare" or "Plaintiff"), acting by and through its attorneys Troutman Pepper Hamilton Sanders LLP brings this complaint against Defendants Dimont & Associates, LLC ("Dimont") and Investor Claim Solutions, LLC ("Investor Claim Solutions" and, together with LoanCare and Dimont, the "Parties"). Except as otherwise indicated as to its own actions and conduct, LoanCare alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1.      This action arises out of breaches of the Master Services Agreement, entered into by LoanCare and Dimont on December 26, 2018 (together with any amendments, changes, or modifications thereto, the "MSA"), a copy of which is attached as **Exhibit A**. LoanCare seeks indemnification, damages, specific performance, and a declaratory judgment.

2.      Under the MSA, the Parties agreed to enter into certain Statements of Work under the MSA to describe the services to be performed by Dimont (the "Claims").

132814629v1

3. In accordance with the MSA, LoanCare and Dimont entered into a Statement of Work #2 - Investor Claims ("SOW #2") with an effective date of July 29, 2019, a copy of which is attached as **Exhibit B**.

4. The SOW #2 is governed by the MSA and required Dimont to provide Investor Claims Processing services to LoanCare as assigned for the following Claim Types:

    a)     FHA Part A Claims – Package preparation and filing

    b)     FHA Part B Claims – Package preparation and filing

    c)     CWCOT Second Chance Claims – Package preparation and filing

    d)     CWCOT Third Party Sale Claims – Package preparation and filing

    e)     FHA Short Sale – Package preparation and filing

    f)     VA Basic Claims – Package preparation and filing

    g)     USDA Claims – Package preparation and filing

5. SOW #2 was amended ("First Amendment") effective September 17, 2020, to provide expanded services and pricing. A copy of the First Amendment is attached as **Exhibit C**

6. SOW # 2 was further amended ("Second Amendment") effective August 31, 2021, to add additional Claim processing services. A copy of the Second Amendment is attached as **Exhibit D**.

7. Dimont made numerous representations and warranties in the MSA, about, among other things, itself, the rights, services, documents, and work product for processing Claims.

8. Under Section 10 of the MSA, once LoanCare suffers or otherwise incurs any loss, cost, expense, or other expenditure as a result of Dimont's breaches of the MSA and related SOWs, Dimont must indemnify LoanCare, reimburse LoanCare, and/or hold LoanCare harmless for LoanCare's damages (the "Losses").

9. Dimont breached the MSA, including, without limitation, by breaching the representations and warranties it made in the MSA, including by failing to meet its contractual obligations related to its preparation, submission, and review of various Claims. More specifically, Dimont failed to comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by – among other things – failing to 1) claim a claimable advance in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim. As a result, LoanCare has incurred, is incurring, and will continue to incur various Losses resulting from Dimont's breaches of the MSA.

10. After discovering LoanCare's breaches of the MSA and other circumstances warranting indemnification, LoanCare provided Dimont with written notice of Dimont's breaches, submitted a claim for indemnification, and demanded that Dimont fulfill its obligations under the terms of the MSA. However, to-date Dimont has not indemnified LoanCare for all of its Losses that result from Dimont's breaches of the MSA, which is a breach of Dimont's obligations under Section 10 of the MSA.

11. LoanCare brings this suit seeking to vindicate its rights under the MSA. Specifically, LoanCare seeks an award of indemnification, damages, specific performance, and a declaratory judgment.

**THE PARTIES**

12. Plaintiff LoanCare is a Delaware limited liability company with its principal place of business located at 3637 Sentara Way, Virginia Beach, VA 23452.

13. Defendant Dimont is a Delaware limited liability company with its principal place of business located at 18451 Dallas Parkway, Suite 200 Dallas, Texas 75287.

132814629v1

14. Defendant Investor Claim Solutions is a Texas limited liability company with its principal place of business located at 6032 Innovation Way, Fort Worth, Texas 76244.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction because (a) the matter in controversy exceeds the value of $75,000, exclusive of interest and costs; and (b) the parties are citizens of different states. 28 U.S.C. §1332(a).

16. The Court has personal jurisdiction over the parties because they contractually consented to personal jurisdiction in New York and contractually waived any right to contest such personal jurisdiction. (MSA at § 13.)

17. Venue is proper in this district because the parties have agreed that any dispute arising under or relating to the Agreement shall be brought in and will be resolved exclusively in either the United States Federal Courts of New York or in the Supreme Court of the State of New York. (MSA at § 13.)

## FACTUAL BACKGROUND

18. LoanCare and Dimont entered into the MSA on December 26, 2018. Under the MSA, the Parties agreed to enter into one or more SOWs to describe the services to be performed by Dimont in greater detail, including the timeframes to complete those services. The SOWs contain: (a) a detailed description of the services to be performed by Dimont; (b) a timeline, target completion dates, or other schedule for performance of the services; (c) specifications for all work product and deliverables to be delivered by Dimont; (d) details regarding the fees to be paid to Dimont by LoanCare for performing the services and details regarding any expenses or cost to be paid by LoanCare; (e) if applicable, LoanCare's assigned tasks and related resources needed for

Dimont to perform the services, and (f) the name and contact information for each party's main point of contact.

19. LoanCare and Dimont entered into SOW #2 effective July 29, 2019. The SOW #2 is governed by the MSA and required Dimont to complete the following tasks and services related to Investor Claims Processing:

    i) DIMONT will access Company[1]-designated systems and cloud Claims systems to acquire any needed data or supporting documentation needed to prepare and file the claim.

    ii) For ongoing flow work, DIMONT must request any missing documentation necessary to file or support the claim from Company within 2 business days or receipt of the assigned loan from Company. If there is no response, DIMONT must proceed with a second request to Company within two (2) business days of the first request.

    iii) DIMONT will complete, validate, and submit claims on behalf of the Company to HUD.

    iv) All claims will be prepared and filed by DIMONT in accordance with the Company's directions and, subject to Section 7 herein, with the Service Level Agreement timelines in Section 3 herein.

    v) DIMONT will record and report in Cloud Claims differences between expenses each line item incurred by Company which are included on the supporting claim documentation, and claimable expenses in accordance with Company's instructions.

    vi) DIMONT will confirm claim receipt by the applicable agency or investor, GSE, and monitor and follow-up for payment on claim submissions as directed by Company.

    vii) Completed claim packages will be saved by DIMONT within Company-designated systems for audit purposes or other Company purposes.

    viii) Images of completed claim packages including all documents required by the investor and/or Company such as a copy of the filed claim, the closing package and all invoices and supporting

---

[1] Company is defined as LoanCare within the MSA.

    ix)  documentation submitted with the package will be provided to Company in a date storage location as determined by Company.

    ix)  DIMONT will perform Loss Analysis on the claims it produces under this SOW in accordance with the terms of the Loss Analysis services SOW dated December 26, 2018, at no additional charge to Company beyond those provided in Section 6 of this SOW.

    x)  Any additional services above and beyond what is stated in this SOW, including on-site quality control, must be mutually approved in writing by the Parties (including applicable pricing adjustments) prior to service delivery.

    xi)  DIMONT shall provide portfolio reporting for services herein in a format prepared by DIMONT and approved by Company.

    xii)  DIMONT shall provide reports, at the request of the Company, within a timeframe as mutually agreed to by the parties so long as the data elements are reasonable obtainable.

(SOW #2 at § 1.3).

20. Section 3.0 of the SOW #2 titled "SERVICE LEVEL AGREEMENT – CLAIM PREPARATION AND FILING" outlined the claim processing services pursuant to standard service level agreements set forth in the following table:

| Claim Type | Action | Service Level Agreement (Turn-Time) |
|---|---|---|
| FHA Part A | File Part A Claim | Within 30 calendar days from terminable action or 2 business days from clearance of all impediments |
| FHA Part B | File Part B | Within 5 business days of submission of the work referral from Company |
| Loss analysis | Perform Loss Analysis on Claims Prepared pursuant to this SOW #2 | 45 business days from the date of the final claim payment |
| CWCOT Second Chance | File 2nd Chance CWCOT Claim | Within 5 business days of submission of the work referral from Company |
| CWCOT Third Party Sales | CWCOT | Within 30 days of receipt of third party sales proceeds |
| FHA Short Sale | File PFS Claim | Within 5 business days of submission of the work referral from Company |
| VA Basic Claim | File Final Claim | Within 60 days of title approval |
| USDA Claims | File USDA Claims | 30 Days from terminable action |

(SOW #2 at § 3.0).

132814629v1

21. The SOW #2 was to be in effect until July 29, 2022, unless terminated or extended under the terms of the MSA.

22. LoanCare and Dimont entered into the First Amendment effective September 17, 2020, which amended Section 1.2 of the SOW #2 to include Supplemental Claims Review/File (All Types), Section 3.0 to add additional supplemental claims to the Service Level Agreement as demonstrated in the following table:

| Category | Action | Service Level Agreement (Turn-Time) |
|---|---|---|
| Supplemental Claims Review/File (All Types) | Review claim payment and trailing invoices as described in the Business Rules document to determine if supplemental claim required. File claim if necessary | Supplemental claim filed within investor guidelines |

(First Amendment at § 3). The First Amendment also amended Section 6.0 of the MSA to add pricing for additional services added to Section 1.2. (First Amendment at §§ 2-4).

23. LoanCare and Dimont entered into the Second Amendment effective August 31, 2021, which further amended Section 1.2 of the SOW #2 to include Assignment/184 Claims, Section 3.0 to define the terms "agency" to mean any and all government sponsored enterprises, non-government sponsored enterprises, and investors, including without limitation FHA, VA, and HUD, and Section 6.0 to add pricing for additional services added to Section 1.2. (Second Amendment at §§ 2-4). The following claims were also added to Section 3.0:

| Category – HUD Claim Type 02** | Action | Service Level Agreement (Turn-Time) |
|---|---|---|
| Indian Housing/184 Claims | Package, prepare, and file the claim per investor guidelines | Claim filed within the applicable agency timelines. |
| Hawaiian Claims | Package, prepare, and file the claim per investor guidelines | Claim filed within the applicable agency timelines. |
| Single Family Loan Sale | Package, prepare, and file the claim per investor guidelines | 30 calendar days from HUD approved claim filing start state |

(Second Amendment at § 3).

24. Dimont made a number of Representations and Warranties in Section 8 of the MSA. Dimont represented and warranted, among other things, that it would perform the Services in a timely and professional manner in the preparation, submission, and review of various Claims. (MSA at § 8).

25. LoanCare's agreement to the terms of the MSA was contingent upon the truth and accuracy of Dimont's Representations and Warranties, which were a material condition of LoanCare entering into the MSA with Dimont.

26. Additionally, under the MSA, Dimont agreed that if LoanCare suffered or incurred any damages, costs, and expenses (including reasonable attorneys' fees) as a result of Dimont's breaches of the MSA, Dimont would indemnify LoanCare, hold LoanCare harmless, and reimburse LoanCare for those damages, costs, or other expenditures, including attorneys' fees. (MSA at § 13).

27. Under Section 13 of the MSA, any limitations period is inapplicable to indemnification (MSA at § 13).

28. LoanCare discovered numerous breaches of the MSA by Dimont and as a result of those breaches LoanCare has suffered and will suffer Losses. LoanCare also has suffered and will suffer Losses in the form of legal fees, costs, and expenses incurred as a result of Dimont's breaches of the MSA.

29. On December 2, 2021, LoanCare sent notice to Dimont that it was failing to meet its contractual obligations under the MSA related to the preparation, submission, and review of various HUD claims. LoanCare identified Losses, which resulted directly from Dimont's errors or omissions in the claims process. A true copy of the December 21, 2021, notice is attached as **Exhibit E**.

30. On December 20, 2021, LoanCare sent Dimont a "Notice of Failing Scores on Claim-Defect Testing Quality Assurance Review and Repeat Findings" that demonstrated repeated adverse Claim Quality Control findings and noted Dimont's failure to comply with an action plan to correct the findings before September 30, 2021. A true copy of the December 20, 2021, notice is attached as **Exhibit F**.

31. On March 7, 2022, LoanCare served Dimont with a Termination Notice effective June 8, 2022, based upon Dimont's sale of its Claims Division to Investor Claim Solutions without the express consent of LoanCare in violation of Section 13 of the MSA. A true copy of the March 7, 2022, Termination Notice is attached as **Exhibit G**.

32. Under Section 13 of the MSA, neither LoanCare nor Dimont may assign its rights and obligations under the MSA without consent to a third-party unless that third-party has acquired all or substantially all of the assets of such Assigning Party and agrees to assume and be bound by the terms of the MSA. (MSA at § 13).

33. In an attempt to have LoanCare consent to the assignment of Dimont's Claims Division to Investor Claim Solutions in violation of the MSA, Dimont sent LoanCare a "Consent and Acknowledgement" document dated March 29, 2022, wherein LoanCare would agree to consent to the subcontracting of Dimont's obligations under the MSA and SOWs. A true copy of the Consent and Acknowledgement document is attached as **Exhibit H**.

34. LoanCare did not sign the Consent and Acknowledgement document and did not consent to the assignment of LoanCare's Claims processing to Investor Claim Solutions.

35. Due to the strict guidelines and timelines involved in Investor Claims Processing and the severity by which investors enforced those guidelines and timelines, there is a substantial risk of loss.

36. Upon information and belief, Investor Claim Solutions had knowledge of the contract between Dimont and LoanCare.

37. Upon information and belief, Investor Claims Solutions purchased the assets of Dimont's investor claims division.

38. At the time of Investor Claims Solutions purchased the assets of Dimont's investor claims division, Dimont performed the majority (if not all) of LoanCare's Investor Claims Processing.

39. On or about April 1, 2022, Dimont entered into a Management Agreement with Investor Claim Solutions, pursuant to which Investor Claim Solutions contracted to perform the services owed by Dimont to LoanCare. A copy of the Management Agreement is attached as **Exhibit I**.

40. Upon information and belief, former Dimont employees became employees of Investor Claim Solutions and performed the contractual services owed to LoanCare. LoanCare is an intended beneficiary of the contract between Dimont and Investor Claim Solutions.

41. Investor Claim Solutions performed those services for approximately six weeks. During those six weeks, the errors identified herein continued.

42. Thereafter, on April 21, 2022, LoanCare served an Indemnification Notice on Dimont under Section 10 of the MSA. The Indemnification Notice identified Losses in the amount of $3,093,219.52, which are related to 1024 loans where Dimont did not comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by failing to 1) claim a claimable advance in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim. As a result, LoanCare has incurred,

is incurring, and will continue to incur various Losses resulting from Dimont's breaches of the MSA. A true copy of the Indemnification Notice dated April 21, 2022, is attached as **Exhibit J.**

43. LoanCare's claims relate to existing, ongoing, and future Losses. To date, LoanCare has incurred Losses of at least $4,059,180.26 due to claim filing errors made by Dimont and Investor Claim Solutions in breach of the terms of the MSA and/or Management Agreement.

44. LoanCare provided Dimont written notice regarding Dimont's breaches of the MSA and Dimont's indemnification and other obligations in accordance with Sections 13 of the MSA. (MSA at § 13).

45. Dimont's indemnification, cure, and other payment obligations with respect to all claims continue in full force and effect to this day.

46. LoanCare is entitled to indemnification, cure, and/or other payment from Dimont concerning all of its claims. (MSA § 10.)

47. However, Dimont has refused to indemnify LoanCare for LoanCare's Losses as required by Section 10 of the MSA.

48. To-date, Dimont has not indemnified LoanCare for its Losses as required by Section 10 of the MSA.

49. LoanCare brings this Complaint for the Losses it has sustained or will sustain because of Dimont and Investor Claim Solution's breaches of the MSA and/or Management Agreement and/or that are otherwise subject to indemnification or other remedies under the MSA.

50. **Exhibit K** to this Complaint sets out detailed information warranting indemnification for Losses on 1770 loans. The information in Exhibit K includes a non-exhaustive list that gives rise to LoanCare's right to indemnification.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Indemnification**

51. LoanCare incorporates by reference all of the allegations in paragraphs 1-50 as if they were set forth fully herein.

52. The MSA is a valid and enforceable agreement enforceable by LoanCare. LoanCare has not breached the MSA. LoanCare has performed all of its obligations in connection with the matters described herein pursuant to the MSA.

53. Under Section 13 of the MSA, any limitations period is inapplicable to indemnification (MSA at § 13).

54. Dimont is obligated to indemnify LoanCare for any Losses that it suffers pursuant to Section 10 of the MSA.

55. Dimont is obligated to indemnify and reimburse LoanCare, and/or hold LoanCare harmless, for attorneys' fees, legal costs, and other costs and expenses incurred in pursuing this action. (MSA at § 10.)

56. Dimont has breached the MSA by, without limitation, breaching its Representations and Warranties in Section 8 of the MSA and by failing to comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by failing to claim a claimable advancer in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim.

57. All of Dimont's breaches of the MSA related to LoanCare's claims are, both individually and in the aggregate, material breaches of the MSA.

58. As a result of Dimont's breaches of the MSA, LoanCare has suffered, is suffering, and/or will suffer Losses that Dimont is obligated to indemnify under Section 10 of the MSA.

132814629v1

59. LoanCare has notified Dimont of the Losses that LoanCare has incurred or paid, is incurring, or paying, and/or will continue to incur or pay as a result of Dimont's breaches of the MSA. LoanCare has requested that Dimont perform its obligation to indemnify and/or reimburse LoanCare, and/or hold LoanCare harmless for these amounts.

60. Dimont has breached Section 10 of the MSA by failing to indemnify and reimburse LoanCare and by failing to hold LoanCare harmless, as required by the MSA.

61. LoanCare has incurred and will incur attorneys' fees, legal costs, and other costs and expenses in pursuing this action, which LoanCare must pay pursuant to Section 10 of the MSA.

62. LoanCare is entitled to be indemnified and reimbursed, and/or held harmless, for an amount to be proven at trial, but not less than $4,059,180.26 (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses incurred in pursuing this action); and an order of specific performance directing LoanCare to perform its obligations under the MSA to indemnify and reimburse LoanCare, and/or hold LoanCare harmless, by paying LoanCare an amount to be proven at trial, but not less than $4,059,180.26.

## SECOND CAUSE OF ACTION
**Breach of Contract**
**(Dimont)**

63. LoanCare incorporates by reference all of the allegations in paragraphs 1-62 as if they were set forth fully herein.

64. The MSA is a valid and enforceable agreement enforceable by LoanCare. LoanCare has not breached the MSA. LoanCare has performed all of its obligations in connection with the matters described herein pursuant to MSA.

65. Dimont has breached the MSA by, without limitation, breaching its Representations and Warranties in Section 8 of the MSA and by failing to comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by failing to claim a claimable advancer in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim.

66. All of Dimont's breaches of the MSA related to LoanCare's claims are, both individually and in the aggregate, material breaches of the MSA.

67. LoanCare has been or will be damaged by Dimont's breaches of the MSA, resulting in Losses.

68. LoanCare has incurred and will incur attorneys' fees, legal costs, and other costs and expenses in pursuing this action, which Dimont must pay pursuant to Section 10 of the MSA.

69. LoanCare is entitled to either damages in the amount to be proven at trial, but not less than $4,059,180.26 (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses incurred in pursuing this action) or an order of specific performance directing Dimont to perform its obligations under Section 10 of the MSA by paying LoanCare an amount to be proven at trial, but not less than $4,059,180.26.

### THIRD CAUSE OF ACTION
**Declaratory Judgment**

70. LoanCare incorporates by reference all of the allegations in paragraphs 1-69 as if they were set forth fully herein.

71. The MSA is a valid and enforceable agreement enforceable by LoanCare. LoanCare has not breached the MSA. LoanCare has performed all of its obligations in connection with the matters described herein pursuant to the MSA.

132814629v1

72. Dimont has breached the MSA by, without limitation, breaching its Representations and Warranties in Section 8 of the MSA and by failing to deliver all of the documents and information required by the MSA, including, without limitation, by failing to comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by failing to claim a claimable advancer in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim.

73. All of Dimont's breaches of the MSA related to LoanCare's claims are, both individually and in the aggregate, material breaches of the MSA.

74. As a result of Dimont's breaches of the MSA, LoanCare has suffered and will suffer Losses that Dimont is obligated to indemnify under Section 10 of the MSA.

75. LoanCare has incurred and will incur attorneys' fees, legal costs, and other costs and expenses in pursuing this action, which Dimont must pay pursuant to Section 10 of the MSA.

76. LoanCare provided Dimont with specific and written notice of all of its Claims and the Breaches of the MSA relevant to its Claims for the existing Losses and any further Losses that accrues on each Claim in the future.

77. LoanCare is entitled to a judgment declaring that Dimont's indemnification and cure under Section 10 of the MSA with respect to the claims in Exhibit K and in the prior notices remain in full force and effect and will continue to do so in the future; that Dimont breached the MSA with respect to the claims identified in Exhibit K and any other Claims as to which LoanCare presents proof at trial; that LoanCare has suffered, is suffering, and will suffer Losses as a result of Dimont's breach of the MSA; and that Dimont must indemnify and/or reimburse LoanCare, hold LoanCare harmless, and is otherwise responsible and liable for any further Loss suffered by LoanCare insofar as they result from the breaches of the MSA underlying LoanCare's claims.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(Investor Claim Solutions)**

78. LoanCare incorporates by reference all of the allegations in paragraphs 1-77 as if they were set forth fully herein.

79. Pursuant to the Management Agreement, Dimont contracted with Investor Claim Solutions for Investor Claim Solutions to perform the services owed to LoanCare. Specifically, Investor Claim Solutions promised to provide the services owed to LoanCare in "a timely and professional manner, and in accordance with applicable laws, as required by the [MSA]." (Management Agreement ¶ 1).

80. The MSA is a valid and enforceable agreement enforceable by LoanCare. LoanCare has not breached the MSA. LoanCare has performed all of its obligations in connection with the matters described herein pursuant to MSA.

81. Upon information and belief, former Dimont employees became employees of Investor Claim Solutions and performed the contractual services owed to LoanCare. LoanCare is an intended beneficiary of the contract between Dimont and Investor Claim Solutions.

82. Investor Claim Solutions performed the services for approximately six weeks. During those six weeks, the errors continued.

83. Investor Claim Solutions has breached the Management Agreement and the MSA by, without limitation, breaching the Representations and Warranties in Section 8 of the MSA and by failing to comply with the HUD Handbook 4000.1, the VA Servicer Handbook M26-4, or the USDA Servicer Guide_HB-1-3555 by failing to claim a claimable advancer in the initial claim or a supplemental claim; or 2) claim debenture interest in the initial claim or a supplemental claim.

84. All of Investor Claim Solutions breaches of the Management Agreement and/or MSA related to LoanCare's claims are, both individually and in the aggregate, material breaches.

85. LoanCare has been or will be damaged by Investor Claim Solutions' breaches of the Management Agreement and/or the MSA, resulting in Losses.

86. LoanCare has incurred and will incur attorneys' fees, legal costs, and other costs and expenses in pursuing this action, which Investor Claim Solutions' must pay pursuant to Section 10 of the MSA.

87. LoanCare is entitled to either damages in the amount to be proven at trial, but not less than $4,059,180.26 (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses incurred in pursuing this action) or an order of specific performance directing Investor Claim Solutions to perform the obligations under Section 10 of the MSA by paying LoanCare an amount to be proven at trial, but not less than $4,059,180.26.

## PRAYER FOR RELIEF

**WHEREFORE**, LoanCare prays for the following relief:

a) Indemnification of LoanCare by Dimont in an amount to be proven at trial (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses associated with pursuing this action), but not less than $4,059,180.26;

b) An order of specific performance directing Dimont to perform its obligations under Section 10 of the MSA by paying LoanCare an amount to be proven at trial, but not less than $4,059,180.26 (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses incurred in pursuing this action);

c) An award of damages in an amount to be proven at trial, but not less than $4,059,180.26 (inclusive of LoanCare's attorneys' fees, legal costs, and other costs and expenses associated with pursuing this action); and/or

      d)    A declaration that:

           i)    Dimont breached the MSA;

           ii)    Investor Claim Solutions breached the Management Agreement and/or the MSA;

           iii)    LoanCare has not breached the MSA;

           iv)    LoanCare has performed all of its obligations under the MSA;

           v)    LoanCare has suffered, is suffering, and will suffer Losses as a result of Dimont's breach of the MSA;

           vi)    LoanCare has suffered, is suffering, and will suffer Losses as a result of Investor Claim Solutions' breach of the Management Agreement and/or MSA;

           vii)    LoanCare's indemnification and other payment obligations under Section 10 of the MSA remain in full force and effect and will continue to do so in the future with respect to the claims in <u>Exhibit K</u> and other loans subject to the MSA; and

           viii)    Dimont must indemnify and/or reimburse LoanCare, hold LoanCare harmless, and is otherwise responsible and liable for any Losses suffered by LoanCare insofar as they result from the breaches of the MSA underlying LoanCare's claims.

      e)    Judgment ordering Dimont to pay LoanCare's costs, fees, and expenses associated with this action, including attorneys' fees, in an amount to be proven at trial;

      f)    Judgment ordering Investor Claims Solution to pay LoanCare's costs, fees, and expenses associated with this action, including attorneys' fees, in an amount to be proven at trial;

      g)    An award of damages in an amount to be proven at trial, but not less than $4,059,180.26 caused by Dimont's breach of contract;

      h)    An award of damages in an amount to be proven at trial, but not less than $4,059,180.26 caused by Investor Claim Solution's breach of contract;

      i)      An award of punitive in an amount to be proven at trial, but not less than $4,059,180.26 caused by Dimont's breach of contract;

      j)      An award of punitive in an amount to be proven at trial, but not less than $4,059,180.26 caused by Investor Claims Solution's breach of contract;

      k)      Prejudgment interest as approved by the Court; and

      l)      For all such other relief to which LoanCare is entitled under law or in equity.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, New York
October 28, 2022

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/Joseph M. DeFazio*
Joseph M. DeFazio
875 Third Avenue
New York, New York 10022
Tel: (212) 704-6341
Joseph.defazio@troutman.com

*Attorneys for Plaintiff LoanCare, LLC*