**Kennedys**

**VIA ECF**

Honorable Judge Jesse M. Furman
United States District Court
Southern District of New York
United States Courthouse
40 Centre Street
New York, NY 10007

570 Lexington Avenue
8th Floor
New York, NY 10022
USA

**t** +1 212.252.0004
**f** +1 212.832.4920

**kennedyslaw.com**

**t** +1 646 625 3995

Martin.West@kennedyslaw.com

5 July 2023

Re: *Loancare LLC v. Dimont & Associates, LLC*
    22-cv-09286-JMF-SLC

Dear Judge Furman,

     We represent Dimont & Associates, LLC ("Dimont") in this matter and write in response to Plaintiff Loancare LLC's ("Loancare") letter dated June 29, 2023 and to cross-move for a discovery extension. Put simply, this matter presents exceptional circumstances that warrant an extension of the presently set discovery deadlines because, despite the parties' diligent efforts, it is impossible for Dimont to review Loancare's 1.5 million document production (estimated to be approximately 15 million pages of documents)[1] and prepare Dimont's witnesses for depositions in time for the August 1, 2023 contention interrogatory deadline. Accordingly, Dimont respectfully requests a three month extension to the current discovery deadlines.

     Some background regarding this dispute is helpful to understand the present situation. Loancare has filed this claim against Dimont seeking to recover damages it allegedly sustained for Dimont's improper processing of over **20,000** loan reimbursement claims, some for as little as $.01.

---

[1] This presumes that Loancare's 1.5 million documents are responsive and not simply an improper document dump. While Dimont believes that this production was what Loancare referred to as the "fat file" which comprises all of the documents related to each individual reimbursement request in dispute, it is simply too early in the review process to make this determination.

# Kennedys

These claims allegedly arise from Loancare's relationship with Dimont under which Loancare contracted with Dimont to have Dimont prepare and submit loan reimbursement requests for federally-backed home loans that had gone into foreclosure. In additional to the loan holder being entitled to recover the loan principal from the respective federal agency, the loan holder would also be entitled to recover other expenses related to the foreclosure process, including property inspections, lawn care, utilities, maintenances, state and local taxes, and related interest.

Loancare required Dimont to perform this work through various cloud-based software programs that Loancare had put in place. This is important as it relates to Loancare's letter because it means that, with some limited exceptions, Dimont did not maintain local copies of the supporting claim documents or the claims it was submitting to the federal agencies. Those records could only be accessed through Loancare's cloud-based systems.

After Loancare began making demands for payment on Dimont related to the present dispute, Dimont employees began reviewing the disputed claims and working with Loancare to determine whether, in fact, there were mistakes made on these claims. After several exchanges between Loancare and Dimont where Dimont demonstrated that a significant portion of the disputed claims were, in fact, properly processed and submitted, Loancare terminated Dimont's access to the cloud-based systems and Dimont was then unable to further access or review the claims to make determinations about the validity of the disputes.

Practically speaking, what this means is that from the middle of 2022 until Loancare's 1.5 million document production,[2] Dimont has been unable to make determinations as the validity of the, now, **20,000 claims** upon which Loancare seeks to recover. These are the specific documents that Dimont utilized in filing the reimbursement requests to the respective federal agencies. Thus, under circumstances where cloud-based systems were not used, Dimont would have had local access to these records and would have been able to prepare its defense over the last several months since the complaints were filed instead of having to wait for Loancare's production. Instead, Dimont is now only just able to begin doing so.

---

[2] To provide some additional context as to how voluminous this production is, Kennedys preferred e-discovery vendor advised that across all of Kennedys US offices, Kennedys has approximately 7TB of data uploaded and Loancare's production here was 2.7TB—over one-third of the total data. Furthermore, the transfer of this data is not a matter of simply dragging and dropping folders, the simple transfer of the files takes days. And, quotes regarding the costs to host this data have exceeded $65,000 per month with some vendors.

# Kennedys

Moreover, in light of the voluminous records in this case, and in an attempt to mitigate litigation costs and time, Dimont proposed an early settlement in this matter and the Court referred this case to Magistrate Judge Cave in March 2022. (ECF No. 42.) Magistrate Judge Cave held a conference with the parties on March 14, 2023 and scheduled a settlement conference for June 8, 2023, with the parties to exchange high level discovery before the conference in an effort to facilitate settlement discussions. (ECF No. 47.) In discussions between counsel, Dimont advised Loancare that it would require proof of payment of damages by Loancare to evaluate Loancare's claim.

In advance of the settlement conference, Dimont made a production on May 19, 2023 containing, in pertinent part, the results of the audits that Dimont completed prior to being disconnected from accessing the claim records. Loancare produced no documents with the exception of those attached to its settlement statement (a declaration under Fed. R. Civ. P. 408 and a preliminary expert report, also under Fed. R. Civ. P. 408).

Because the damages documentation had not been produced, the session was not particularly productive and Magistrate Judge Cave scheduled another settlement conference session for July 5, 2023, with the understanding that Loancare would produce documents regarding its damages in advance of that date so that Dimont could make a proper evaluation of Loancare's claim. (ECF No. 53.)

Following receipt of Loancare's production, Dimont attempted a targeted review of the production to find and review the damages documentation in Loancare's production. During the meet and confer on June 27, 2023, Loancare advised that the damages documentation had still not produced and would be forthcoming. It was not until July 3, 2023 that Loancare produced documentation allegedly evidencing proof of damages in the form of a spreadsheet.[3] In light of the last minute production, Magistrate Judge Cave set a third settlement conference for July 27, 2023.

So, to be clear, Dimont has been diligent in moving this case forward with a goal toward reaching an efficient and inexpensive resolution of this matter. That being said, there have been delays in preparing Dimont's full production of electronically stored information. This is largely because Dimont's loan processing division is no longer extant as it has largely been transitioned to co-defendant Investor Claims Solutions, LLC ("ICS") and due to some technological issues with respect to how Dimont backed up its emails. Of the 21 deposition notices served on Dimont

---

[3] Dimont has not had sufficient time to review, understand, and analyze this spreadsheet.

# Kennedys

by Loancare, only three of the individuals are still affiliated with Dimont. As discussed in Loancare's letter, during the meet and confer, Dimont advised that it would make the initial production of its electronically stored information by July 14, 2023.

Thus, while Dimont remains committed to moving this matter forward in an efficient manner, it simply cannot review Loancare's 1.5 million document production, produce its responsive documents, and prepare its employees for deposition within the current discovery schedule and therefore, respectfully requests a 3 month extension to the current discovery deadlines.

Pursuant to the Court's Individual Rules and Practices In Civil Cases (2)(E), Dimont raised the option of seeking an discovery extension with Loancare via email and during the recent meet and confer. Loancare would not consent to the request for the extension. The reasons provided by Loancare for refusing to consent were: 1) it did not think that the request would be granted; and 2) that counsel was instructed to act as if the current deadlines will remain in place. ICS has consented to the extension.

A three month extension would move the deadline for all fact discovery from September 1, 2023 to December 1, 2023. The deadline for expert discovery would be similarly adjusted from November 3, 2023 to February 2, 2023. There have been no previously requests for extensions of the discovery deadlines. And, the parties next scheduled appearance before the Court is set for September 6, 2023.

We thank Your Honor for your attention to this matter and are available to attend a conference to discuss these issues.

Respectfully submitted,

*Martin R. West*

**Martin R. West II**
Special Counsel

---

Under the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). Given Loancare's representations in its letter-motion, which are not particularly challenged here, the Court is not persuaded that Dimont has, or can, show good cause. That said, the Court will, as a courtesy, extend the discovery deadlines by one month. Dimont shall respond **in full** to Loancare's March 14, 2023 Discovery Demands no later than **July 28, 2023**; shall produce the list of ICS employees no later than **July 12, 2023**; and shall promptly schedule the three depositions of its employees, which shall take place no later than **August 4, 2023**, unless the parties agree or the Court grants leave to do otherwise. In light of the extension, the next pretrial conference is RESCHEDULED to **October 18, 2023**, at **9 a.m.** Counsel should not expect further discovery extensions --- especially if the lackluster approach to discovery continues. The Clerk of Court is directed to terminate ECF No. 54. SO ORDERED.

July 7, 2023